UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| DONALD L. CURETON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 3:03-CR-116-TWP-HBG-1 |
| | ) | | 3:16-CV-298-TWP |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM AND ORDER**

On June 6, 2016, Petitioner filed an expedited motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 54].[1] The petition challenges his armed career criminal designation in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), a decision in which the Supreme Court invalidated the residual provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), for unconstitutional vagueness [*Id.*; Doc. 55].

On June 29, 2016, the United States responded with the suggestion that Petitioner's entitlement to relief hinges on whether Tennessee aggravated burglary remains susceptible to categorization as a violent felony under the ACCA enumerated offense clause [Doc. 57]. Noting the Sixth Circuit has agreed to address that very issue *en banc* in *United States v. Stitt*, 646 F. App'x 454 (6th Cir. 2016), the United States requests that the Court defer resolution of Petitioner's § 2255 motion pending the Sixth Circuit decision [*Id.*]. Petitioner replied in opposition to the

---

[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDS") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based upon *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDS filed original and amended expedited petitions [Docs. 54, 55].

requested stay, arguing that the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), conclusively demonstrates that Tennessee's aggravated burglary statute is incapable of supporting enhancement independent of the now-defunct residual provision, making a stay unnecessary [Doc. 59]. Noting that he would be entitled to immediate release if Tennessee aggravated burglary is found to be distinct from generic burglary, Petitioner requests release on bond [Doc. 60]; a request to which the United States has responded in opposition [Doc. 61].

I. **Motion to Stay Pending *En Banc* Decision in *United States v. Stitt***

This Court agrees with Petitioner that the clarifications regarding the categorical approach outlined in the *Mathis* decision apply to post-conviction challenges raised prior to its issuance, *see* 136 S. Ct. at 2257 ("Our precedents make this a straightforward case."); *Chaidez v. United States*, 133 S. Ct. 103, 107 (2013) ("[W]hen we apply a settled rule . . . a person [may] avail herself of the decision on collateral review."); *Whorton v. Bocking*, 549 U.S. 406, 414–16 (2007) (explaining a decision that clarifies existing law "applies . . . on collateral review"), and, as a result, acknowledges that the decision could impact Petitioner's entitlement to collateral relief in light of *Johnson*.[2] It disagrees, however, that the *Mathis* decision should be read as overruling the Sixth Circuit holdings in *United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007), or *United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015)—which held that Tennessee aggravated burglary

---

[2] Unlike a new rule of law, the *Mathis* decision does not trigger a renewed one-year limitation period under 28 U.S.C. § 2255(f)(3). *See, e.g.*, *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1207 n. 4 (11th Cir. 2012) ("If the decision merely clarifies an old rule . . . then the decision applies [on collateral review]. However, under such circumstances the petitioner will not be able to take advantage of the extended statute of limitations.").

2

categorically qualifies as a generic burglary under *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013), and *Taylor v. United States*, 495 U.S. 575, 599 (1990).[3]

In *Mathis*, the Supreme Court held: (1) a prior conviction cannot qualify as a predicate offense under the enumerated-offense clause if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfying a single indivisible element; and (2) Iowa's burglary statute—which defined "structure" as "any building, structure, [or] land, water, or air vehicle"—was incapable of supporting ACCA enhancement because the provision was both indivisible and overbroad. *Mathis*, 136 S. Ct. at 2251–52, 2256–57.[4] In reaching the first conclusion, the Supreme Court

---

[3] Similarly, the grant of rehearing *en banc* in *United States v. Stitt*, 646 F. App'x 454 (6th Cir. 2016), did nothing to alter the status of *Nance* and *Priddy* as binding precedent. *See, e.g.*, *United States v. Matos*, No. 3:13-cr-98, 2014 WL 1922866, at *3 (W.D. Ky. May 14, 2014) (explaining that a "district court is bound to follow the holding of a prior decision of the Court of Appeals for the circuit in which the district court is located until that binding precedent is expressly overruled." (citation omitted)); *accord D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 721 (N.D. Ohio 2010) ("This is a district court, and it must follow binding precedent when such precedent exists.").

[4] To determine whether a particular offense qualifies as a violent felony under § 924(e), courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. at 2285. They do so by employing a "categorical approach," under which courts look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the courts' task is complete. It is only when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that courts must determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple, alternative version of the crime. *Id.* at 2281. When faced with a divisible statute, courts resort to the "modified categorical approach," consulting "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* An indivisible statute is one that contains a single crime, set of elements. *Mathis*, 136 S. Ct. at 2249. Because the categorical approach is concerned with elements and not the "facts underlying [the] conviction," *Descamps*, 133 S. Ct. at 2285, it is important that courts distinguish between alterative elements—divisible provisions to which the modified categorical approach can be applied—and

expressly overruled the Sixth Circuit's holding in *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015). *Id.* at 2251 n.1 (noting the existence of a circuit split about whether the modified categorical approach could be used to distinguish between differing factual means of satisfying a single statutory element, reversing Sixth Circuit's decision on issue in *Ozier*).

To the extent Petitioner suggests that the Supreme Court's reversal of *Ozier* should be read as an implicit reversal of *Nance* and *Priddy*, the Court disagrees. Unlike *Ozier*—which held that Tennessee Code Annotated § 39-14-403 was divisible and only a handful of its variants qualified as violent felonies under the enumerated-offense clause, 796 F.3d at 601–02, *Nance* and *Priddy* make no reference to divisibility. To the contrary, both *Nance* and *Priddy* operate under the opposite assumption—that Tennessee Code Annotated 39-14-401(1) is indivisible—before concluding that the entirety of that indivisible provision constitutes generic burglary. *Priddy*, 808 F.3d at 684; *Nance*, 481 F.3d at 887–88. *Mathis* merely confirms that the Tennessee Code Annotated § 39-14-403 is indivisible, not divisible.

To the extent Petitioner suggests that holding the Iowa burglary statute broader than generic burglary compels a similar conclusion with respect to the definition of "habitation" in Tennessee Code Annotated § 39-14-401(1), he is mistaken. The Iowa definition of "structure," which includes "any . . . land, water, or air vehicle," differs from the Tennessee definition of "habitation" in that the latter reaches only those trailers, tents, or self-propelled vehicles that are designed or adapted for the overnight accommodation of persons.[5] Generic burglary includes any conviction,

---

alternative means for satisfying a single element—indivisible provisions to which it cannot. *Mathis*, 136 S. Ct. at 2253–54. Convictions under an overly broad, indivisible provision are incapable of serving as predicate offenses under the ACCA. *Id.*

[5]   Tennessee Code Annotated § 39-14-403(a) provides that "[a]ggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." The statute incorporates two definitions: burglary as set forth in Tennessee Code Annotated § 39-14-402; and "habitation" as

4

"having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. This "uniform definition" was intended to "approximate" the Model Penal Code and encompass "the criminal codes of most States," *Id.* at 598 n. 8. At the time the Supreme Court adopted the above definition, the Model Penal Code defined burglary as "enter[ing] a building or occupied structure, or separately secured or occupied portion thereof, with the purpose [of] commit[ing] a crime therein," Model Penal Code § 221.1 (1990), and defined "occupied structure" as "any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present," *Id.* at § 221.0. Upon review, Tennessee aggravated burglary categorically aligns with the Model Penal Code definition.[6]

While it is true that this Court has an obligation to follow the Supreme Court where an intervening decision of that Court directly reverses an opinion of the Court of Appeals or implicitly reverses the same through a case with indistinguishable facts, *In re Higgins*, 159 B.R. 212, 215 (S.D. Ohio Aug. 13, 1993), such is not the case here. In cases like the instant one—where the

---

set forth in Tennessee Code Annotated § 39-14-401. The latter definition includes "any structure, including buildings, module unites, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." Tenn. Code. Ann. § 39-14-401(1)(A).

Iowa Code Annotated § 713.1 defines burglary as unlawful entry of an "occupied structure" with "intent to commit a felony, assault or theft therein." Occupied structure includes "any building, structure, appurtenances to buildings and structures, land, water or air vehicle," *Id.* at § 702.12.

[6]    While both Tennessee Code Annotated § 39-14-403(a) and Iowa Code Annotated § 713.1 cover vehicles and structures, it is the latter's inclusion of vehicles not adapted for the overnight accommodation of persons or the carrying on of business that expands the Iowa provision beyond the scope of generic burglary. *See Mathis*, 136 S. Ct. at 2250 (noting that the Iowa provision covered *all* land, water, or air vehicles (emphasis added)); *Taylor*, 495 U.S. at 578 n.1 (noting that Missouri's second-degree burglary statute reached "more broadly" than generic burglary because it criminalized the breaking and entering into *any* booth, tent, boat, vessel, or railroad car" (emphasis added)).

intervening decision neither expressly nor implicitly overrules the prior Court of Appeals decision, a district court must "be extremely careful in concluding that circuit precedent is no longer good law," *Id.* at 216 (quoting *Rodriguez v. Bowen*, 678 F. Supp. 1456, 1462 (E.D. Cal. 1988), and should only deviate from such authority where it is "powerfully convinced that the circuit will overrule itself at the next available opportunity," *Beard v. Whitley Cnty. REMC*, 656 F. Supp. 1461, 1471 (N.D. Ind. 1987), *aff'd*, 840 F.2d 405 (7th Cir. 1988). "[S]ub silentio overruling of a Court of Appeals decision by a Supreme Court case resting on different facts is a rare occurrence," and thus deviation from otherwise-binding precedent requires strong, objective evidence that the "higher court would repudiate [its holding] if given a chance to do so." *In re Higgins*, 159 B.R. at 216 (quoting *Norris v. United States*, 687 F.2d 899, 904 (7th Cir. 1982)). Tennessee Code Annotated § 39-14-403(a) is distinguishable from the Iowa provision at issue in *Mathis* in that the former alone is categorically subsumed within the Model Penal Code definition of burglary. That distinction prevents this Court from saying with sufficient conviction that the Sixth Circuit will read the *Mathis* decision as reversing *Nance* or *Priddy*.

While this Court lacks sufficient grounds to conclude *ad initio* that the Sixth Circuit will interpret the *Mathis* decision as reversing the prior holdings in *Nance* and *Priddy*, it agrees with the United States that such a reversal remains a possibility and that a stay is appropriate.

II. **Motion for Release on Bond for Duration of the Stay**

While there is no statutory authority for releasing a prisoner on bond pending disposition of his § 2255 motion, *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986), granting bail is within the "inherent power" of a district court. *Id.* (quoting *In re Wainwright*, 518 F.2d 173, 174 (5th Cir. 1975) (per curium); *accord Jago v. U.S. Dist. Ct.*, 570 F.2d 618, 622 (6th Cir. 1978 ([A]t common

6

law courts had the inherent power to grant bail."). Because "the case for bail pending resolution of [a] post-conviction proceeding is . . . weaker than the case for bail pending appeal," *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985), applicants are required to make a "greater[-than-normal] showing of special reasons for admission to bail," *Arson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers) (denying bail application).[7]

To obtain bail pending resolution of a post-conviction challenge, a prisoner "must be able to show not only a substantial claim of law . . . but also the existence of some circumstance making the motion or bail exceptional and deserving of special treatment in the interests of justice." *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990); *accord Wingo v. United States*, 341 F. App'x 132, 135 (6th Cir. 2009) (noting that few prisoners will be able to satisfy that standard); *Martin*, 801 F.2d at 329 ("[P]etitioner's are rarely granted release on bail pending disposition."). In other words, there must be both "exceptional circumstances . . . [and] a substantial likelihood of success in the § 2255 motion." *Morgan v. United States*, No. 93-2267, 1944 WL 182141, at *2 (6th Cir. May 11, 1994); *see also Pena v. United States*, No. 97-3211, 1997 WL 242031, at *1 (6th Cir. May 8, 1997) (same); *United States v. Kelly*, 790 F.2d 130, 139 (D.C. Cir. 1976) (reiterating that a release request during habeas proceedings is "measured against a heightened standard requiring a showing of exceptional circumstances").

In an attempt to demonstrate exceptional circumstances, Petitioner notes that, if meritorious, he would be entitled to immediate release [Doc. 60]. Citing this fact, he argues the

---

[7] "The eligibility of a habeas petitioner for bail is not on the same footing as that of a pretrial accused who is presumptively innocent, or that of a convicted defendant on direct appeal." *Ostrer v. United States*, 584 F.2d 594, 599 (2nd Cir. 1978); *see also Tetramariner v. United States*, No. 91-5324, 1991 WL 142629, at *1 (6th Cir. July 31, 1991) (affirming the denial of bond; explaining that proof a person "posed neither a threat to society nor a risk of flight" is inadequate to compel release pending disposition of a § 2255 motion).

interests of justice require that any stay be accompanied by the possibility of release on bond so as to avoid a scenario in which he is forced to serve a term of incarceration that exceeds the ten-year maximum authorized by 18 U.S.C. § 922(a)(2) [*Id.* (characterizing the instant case as unique based on the fact the stay could result in Petitioner serving a greater sentence that Congress authorized the Court to impose)]. With regard to the second prong—success on the merits, he reiterates that the *Mathis* decision overruled the holdings in *Nance* and *Priddy* [*Id.*].

For reasons previously discussed, this Court disagrees that the Sixth Circuit is likely to interpret the *Mathis* decision as reversing its earlier holdings and, as a result, remains bound by those decisions. Because Petitioner has failed to establish a likelihood of success on the merits, the Court declines to address whether the potential of serving a sentence in excess of that authorized by law amounts to exceptional circumstances. *Compare United States v. Mett*, 41 F.3d 1281, 1282 n.4 (9th Cir. 1995) ("Special circumstances include a serious deterioration of health while incarcerated, and unusual delay in the appeal process."), *and Benson v. California*, 328 F.2d 159, 162 (9th Cir. 1964) ("It would not be appropriate . . . to [grant] bail even if we found that . . . his petition for habeas corpus made out a clear case for release . . . . [because] [s]omething more than that is required."), w*ith United States v. Lee*, No. 12-00133, 2016 WL 1039046, at *2 (D. Haw. Mar. 15, 2016) (granting bond where ongoing incarceration would result in a sentence that exceeds the maximum authorized term under 18 U.S.C. § 922(a)(2)).

Accordingly, the United States's request for a stay [Doc. 57] is **GRANTED** and the action [E.D. Tenn. Case No. 3:16-CV-298-TWP] is **STAYED** pending the Sixth Circuit's *en banc* decision in *Stitt*. The parties are **DIRECTED** to file a joint status report within thirty (30) days of that decision. Petitioner's request for release on bond [Doc. 60] is **DENIED**.

**IT IS SO ORDERED.**

                                      s/ Thomas W. Phillips
                              SENIOR UNITED STATES DISTRICT JUDGE